UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————

| | | |
|---|---|---|
| CHRIS ALLWEIN et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 5:16-cv-02049 |
| | : | |
| PPG INDUSTRIES; | : | |
| INTERNATIONAL UNION OF PAINTERS AND | : | |
| ALLIED TRADES, AFL-CIO, DISTRICT | : | |
| COUNCIL 21; | : | |
| INTERNATIONAL PAINTERS AND ALLIED | : | |
| TRADES INDUSTRY PENSION PLAN; and | : | |
| THE BOARD OF TRUSTEES OF THE | : | |
| INTERNATIONAL PAINTERS AND ALLIED | : | |
| TRADES INDUSTRY PENSION PLAN, | : | |
| | : | |
| Defendants. | : | |

———————————————————————

**O P I N I O N**

**Plaintiffs' Motion to Stay Binding Arbitration, ECF No. 19 – Denied**
**Defendant IUPAT District Council 21's Motion for Summary Judgment, ECF No. 21 –**
**Denied in Part and Granted in Part**

**Joseph F. Leeson, Jr.**                                    **September 28, 2017**
**United States District Judge**

## I.     Introduction

Plaintiffs in this matter, a group of thirty-seven employees of PPG Industries, have

brought suit against the following parties: (1) PPG; (2) Local 1269 of the International Union of

Painters and Allied Trades (IUPAT), District Council 21, of which Plaintiffs are members; (3)

the IUPAT Pension Plan; and (4) the Pension Plan's Board of Trustees. Plaintiffs allege that PPG

breached the collective bargaining agreement between PPG and the Union by failing to

appropriately remit certain funds to Plaintiffs' pension plan. Plaintiffs further allege that the

Union has failed to fairly represent them in processing their grievance on this issue. After

Plaintiffs filed the present lawsuit, PPG and the Union agreed to arbitrate Plaintiffs' grievance.

Plaintiffs now move the Court to stay the arbitration pending the resolution of this lawsuit. The

Union, on the other hand, moves the Court to grant summary judgment in its favor and dismiss

this lawsuit or, in the alternative, to stay this litigation pending the arbitration between PPG and

the Union.[1]

Because Plaintiffs are required by the terms of the collective bargaining agreement

(CBA) to arbitrate this dispute, the Court denies their motion to stay the arbitration. Also,

because the pending arbitration will not moot Plaintiffs' claims against the Union, and because

there are genuine issues of material fact with respect to those claims, the Court denies the

Union's motion for summary judgment. Finally, the Court grants the Union's motion, in the

alternative, to stay this matter pending the arbitration.

## II.    Background

Plaintiffs allege the following facts.

The thirty-seven Plaintiffs in this matter are employees of PPG Industries, a global

manufacturer of paint and other materials that operates a site in Reading, Pennsylvania, at which

Plaintiffs work. Compl. ¶¶ 1-38, 44, 50, ECF No. 1. PPG is subject to a CBA with Local 1269, a

local chapter of the International Union of Painters and Allied Trades, AFL-CIO. Compl. ¶¶ 39,

54. All of the Plaintiffs are members of Local 1269, and most of the Plaintiffs had formerly been

---

[1]      In letters to the Court, PPG and the Pension Plan Defendants have expressed their
neutrality with respect to the motions filed by Plaintiffs and the Union. Specifically, in a letter
dated September 12, 2016, counsel for PPG stated that PPG "takes no position on the merits of
either motion before the Court." In a letter dated September 14, 2016, counsel for the Pension
Plan Defendants states that the Plan has not responded to the motions because "there is no
financial incentive for the Pension Fund to become involved in the disagreement over choice of
venue for the contract interpretation matter."

members of Local 1309, which was merged into Local 1269 in early 2011. Compl. ¶ 45. District Council 21 (or "the Union") is the district office of IUPAT and provides services for Local 1269. Compl. ¶ 39.

Under the CBA, PPG is required to withhold a specified amount from each employee's wages and remit that amount to the IUPAT Pension Plan, a defined benefit pension plan providing retirement benefits for, among others, the Plaintiff employees in this matter. Compl. ¶¶ 41, 56-58. The Plan is administered by the IUPAT Board of Trustees, which is responsible for ensuring that employees participating in the Plan accrue and receive benefits in accordance with the Plan and with any relevant CBA. Compl. ¶ 42.

According to Plaintiffs, PPG and its predecessors have violated the CBA by failing to remit to the Pension Plan the entire amount withheld from Plaintiffs' (and other employees') overtime and paid time for vacations, holidays, and paid leaves of absence. Compl. ¶¶ 56-76. In November 2014, Plaintiff Barry Schwab, as Union steward, filed a grievance on behalf of all employees of PPG and its predecessors with respect to this issue. Compl. ¶¶ 88-89. Approximately five months later, in April 2015, most of the Plaintiffs signed a letter of "no-confidence" concerning Kenneth Kraft, the Business Agent for District Council 21, based in part on his failure to act on their behalf in resolving the grievance. Compl. ¶¶ 82, 93. A few months after that, in July 2015, Schwab contacted Tim Maitland, an agent of the Plan, to request information concerning how to correct pension statements which incorrectly calculated hours worked for purposes of the Plan. Compl. ¶ 95. The Plan responded to Schwab in October 2015, indicating that it was working on the issue. Compl. ¶ 99. But after that communication, neither Schwab nor any of the other Plaintiffs heard anything further from the Plan with respect to this matter. Compl. ¶ 100. In February 2016, Kraft told Plaintiff Wayne Baker that Plaintiffs, or

someone on behalf of Plaintiffs, had caused a problem in resolving the grievance, because they had reached out to the Plan independently of the Union. Compl. ¶ 102. According to Plaintiffs, "[i]t appeared from Kraft's communication to Plaintiff Baker that Defendant District Council 21 was not planning any further moves to try to resolve the grievance." Compl. ¶ 104.

Plaintiffs allege on information and belief that the Union "has refused to take further action on this matter because of Schwab's criticism of it and its leadership, or, alternatively, because certain Plaintiffs signed the letter of 'no-confidence' in Kraft," and that the Union "has not, and does not intend to resolve this issue and is not trying to make Plaintiffs whole for the amounts that should have been credited to their Plan accounts and that should have been paid to the Plan." Compl. ¶¶ 105, 110. With respect to the Plan, Plaintiffs allege that it "has been unresponsive to requests to provide a further remedy to the situation," has "failed to provide a reasonable claims procedure for Plaintiffs to follow," and has "misled Plaintiffs by not working to resolve the issue." Compl. ¶¶ 106, 108, 111.

On the basis of these factual allegations, Plaintiffs assert that the Union breached its duty of fair representation to Plaintiffs, and they ask that the Union be enjoined from "stonewalling the resolution of the grievance" and from "discriminating against any of the Plaintiffs because of their actions taken to vindicate their rights herein," and that the Union be ordered to "resolve this matter in a manner that makes Plaintiffs whole" and to "make Plaintiffs whole for all losses incurred as a result of its breach of its duty of fair representation." Compl. ¶¶ 112-116. With respect to PPG, Plaintiffs assert that by not remitting the appropriate amount of funds to the Plan, PPG breached the CBA, in violation of the Labor Management Relations Act (LMRA), and violated the Fair Labor Standards Act (FLSA), and they request that PPG be ordered to make Plaintiffs whole by remitting all payments owed to the Plan, as well providing other relief.

Compl. ¶¶ 117-119, 148-154. In addition, Plaintiffs assert claims under the Employee Retirement

Income Security Act (ERISA) against the Plan and the Plan Board of Trustees, contending that

the Plan has failed to credit Plaintiffs with benefits to which they are entitled, Compl. ¶¶ 120-

135, and that the Board has breached its fiduciary duty to Plaintiffs by virtue of the Plan's failure

to credit Plaintiffs with the appropriate benefits, Compl. ¶¶ 136-140. Finally, Plaintiffs assert

claims under ERISA against the Union, contending that the Union interfered with Plaintiffs'

rights under that statute. Compl. ¶¶ 141-147.

The parties agree that shortly after Plaintiffs filed their Complaint in this matter, the

Union, pursuant to the CBA,[2] submitted Plaintiffs' grievance to binding arbitration.[3] After

learning that the Union had submitted the matter to arbitration, Plaintiffs moved the Court to stay

the arbitration proceedings pending the resolution of this litigation. In their motion, Plaintiffs

allege that ever since Local 1309 (to which most of the Plaintiffs formerly belonged) was merged

into Local 1269 in early 2011, District Council 21 and Kenneth Kraft, the business agent for

District Council 21, have acted to marginalize them by repeatedly failing to respond to their

concerns and by otherwise treating them in a hostile manner. Pls.' Br. Supp. Mot. 3-5, ECF No.

20.[4] Plaintiffs contend that it was only because of the instant litigation that the Union submitted

---

[2]     Article 12, Paragraph 8 of the CBA provides that "[a]ny question, grievance or dispute
arising out of and involving the interpretation and application of the specific terms of this
Agreement in which the Director, Labor Relations and Compliance of the Company and the
Business Representative of the Union are unable to reach a satisfactory settlement . . . shall, at
the written request of either party, be submitted to an impartial arbitrator." Union's Mot. Ex. A,
CBA, ECF No. 21-1.
[3]     Plaintiffs filed their Complaint in April 2016 and sent a waiver of the service of summons
form to the Union on May 3, which the Union signed on May 25, *see* ECF No. 3. According to
the Union, it formally demanded arbitration of the dispute on June 8, and the parties thereafter
selected an arbitrator. Union's Mot. 2, ECF No. 21.
[4]     In support of these allegations, Plaintiffs have attached to their motion affidavits from
Plaintiffs Barry Schwab, Wayne Baker, and Glen Moyer, describing their interactions with Kraft

this matter to arbitration and that, "[g]iven the history of marginalization of this group [i.e.,

Plaintiffs] by District Council 21, and the lack of effort on the part of District Council 21 to

protect the rights of these employees and to move this matter forward, it is clear that District

Council 21 would not vigorously and thoroughly represent Plaintiffs' rights in any arbitration in

this matter." *Id.* at 5. According to the Union, however, Plaintiffs "cannot identify any legally

cognizable harm that's been suffered by the Union's conduct that would not be resolved by the

Union's submission to an arbitrator" and "[c]onsequently, there can be no violation of the duty of

fair representation." Def.'s Mot. 5, ECF No. 21. The Union seeks summary judgment or, in the

alternative, asks that the Court stay this action pending the arbitration between it and PPG.

## III.     Standard of Review

### A.     Summary Judgment

Summary judgment is appropriate if the moving party "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A fact is material if the fact "might affect the outcome of the suit under the

governing law," and a dispute is genuine if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). When the evidence favoring the nonmoving party is "merely colorable" or "not

significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

The parties must support their respective contentions—that a fact cannot be or is genuinely

disputed—by "citing to particular parts of materials in the record" or "showing that the materials

cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

---

and other circumstances surrounding the present grievance. Pls.' Mot. Exs. 1-3, ECF Nos. 19-1,
19-2, and 19-3.

B.      **Stay Proceedings**

"The power to stay is incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication." *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994).

IV.     **Analysis**

A.      **Plaintiffs' motion to stay arbitration is denied.**

The gravamen of Plaintiffs' lawsuit is that PPG and its predecessors have violated the CBA by failing to remit certain payments to the Pension Plan. Plaintiffs are entitled to bring this claim on their own behalf against PPG under § 301 of the Labor Management Relations Act of 1947, which authorizes suits in the district court for "violation of contracts between an employer and an organization representing employees." 29 U.S.C. § 185. But where, as here, the collective bargaining agreement contains procedures for the settlement of disputes through grievance and arbitration, "these contractual remedies are binding on individual employees, and their section 301 suits must be dismissed if those remedies have not been exhausted." *See Ames v. Westinghouse Elec. Corp.*, 864 F.2d 289, 292 (3d Cir. 1988) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965)). An exception to this exhaustion-of-remedies rule arises, however, when the union, "in breach of its duty of fair representation, fails to process the employee's claim through the contract dispute resolution process." *Id.*[5] In such cases, the employee can bring a "hybrid" action, which comprises two causes of action: "the employer's

---

[5]     The duty of fair representation "is inferred from unions' exclusive authority under the National Labor Relations Act . . . to represent all employees in a bargaining unit." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 563 (U.S. 1990). "The duty requires a union 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Id.* (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)).

breach of a collective bargaining agreement under § 301 of the Labor Management Relations Act . . . and the union's breach of its duty of fair representation under the National Labor Relations Act." *See Keister v. PPL Corp.*, No. 4:13-CV-00118, 2015 WL 5895787, at *6 (M.D. Pa. Oct. 6, 2015). Were it not for this exception, "the union's default would leave the employee without a remedy for breach of a collective bargaining agreement of which the employee was the beneficiary." *Ames*, 864 F.2d at 292.

Plaintiffs' Complaint alleges a default of this kind, asserting that the Union failed to pursue its grievance against PPG, and that it did so for arbitrary and discriminatory reasons. But, as set forth above, after Plaintiffs filed their Complaint the Union submitted the grievance to arbitration, and an arbitration hearing is now pending. Plaintiffs acknowledge that "[g]enerally, except for a matter specifically excluded from arbitration in a collective bargaining agreement, all questions on which the parties to a collective bargaining agreement disagree must be submitted to arbitration." Pls.' Br. Supp. Mot. 9 (*citing United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574 (1960)).[6] Nevertheless, they contend that "an exception to this rule has been recognized where bargaining unit members will not be protected because the union will not properly advance their rights in arbitration." *Id.* In support of this proposition, Plaintiffs primarily rely on the case of *Sheridan v. Liquor Salesmen's Union, Local 2, D.R.W. & A.W.I.U.A., AFL-CIO*, 444 F.2d 393, 394 (2d Cir. 1971) (per curiam), in which the court, quoting an earlier Second Circuit case, held that when an "employee's case is  based upon a conspiracy between his union and his employer to deprive him of his rights, he cannot be forced to submit

---

[6]     *Warrior & Gulf* is one of a trio of Supreme Court cases, along with *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960), and *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564 (1960), that are collectively known as the "Steelworkers' Trilogy," through which the Court "made it clear that the national labor policy favors the settlement of labor disputes through arbitration." *See Local 616, Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO v. Byrd Plastics, Inc.*, 428 F.2d 23, 23–24 (3d Cir. 1970).

that issue to an arbitration between the employer and the union." *Id.* (quoting *Hiller v. Liquor Salesmen's Union Local No. 2*, 338 F.2d 778, 779 (2d Cir. 1964)). The court stated that in such a situation, arbitration

> would fail completely to settle the issues between the union member and his union. It would entrust representation of the employee to the very union which he claims refused him fair representation, and it would present as adversaries in the arbitration procedure the two parties who, the employee claims, are joined in a conspiracy to defraud him.

*Id.* (quoting *Hiller*, 338 F.2d at 779 (2d Cir. 1964)).

It does not appear that the Court of Appeals for the Third Circuit, or any district court within this Circuit, has recognized the conspiracy exception cited by Plaintiffs. *Cf. Dezura v. Firestone Tire & Rubber Co.*, 470 F. Supp. 121, 125 (E.D. Pa. 1979) ("Merely alleging a conspiracy between the employer and union will not counterbalance the strong federal policy of judicial deference to a labor organization's prior opportunity to resolve internal disputes."). But even if such an exception exists, Plaintiffs have failed to properly invoke this theory, as they have not alleged a conspiracy between the Union and PPG in this matter. Rather, as the Union points out, based on Plaintiffs' allegations, it appears that the Union's interests would be precisely the same as those of Plaintiffs', namely to bring the appropriate amount of contributions into the pension fund. Nor does it appear that cases such as *Sheridan* may be read more generally "to hold that an employee's dissatisfaction with his union's initial handling of his grievance is sufficient without more to bar the union from subsequently representing him." *See Zamren v. Retail Wholesale Employees Union, Local 305 AFL-CIO of Westchester Cty. & Vicinity*, No. 80 CIV. 3925, 1981 WL 2377, at *4 n.5 (S.D.N.Y. Sept. 23, 1981). Accordingly, Plaintiffs' motion to stay the arbitration is denied. *Cf. Niro v. Fearn Int'l, Inc.*, 827 F.2d 173, 178

(7th Cir. 1987) ("[T]he filing of a hybrid section 301 suit should not preclude the possibility of arbitration pursuant to a collective bargaining agreement.").

This result "does not leave [Plaintiffs] without remedy, in the event of any future failure by the Union to fairly represent [them] at the arbitration." *See Zamren*, 1981 WL 2377, at *5. Rather, the Supreme Court has held that a collective bargaining agreement arbitration award in the employer's favor is "reviewable and vulnerable if tainted by breach of duty on the part of the union." *Id.* (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 568 (1976)); *see Ames*, 864 F.2d at 292 ("Moreover, even if the employee's claim is presented in the grievance arbitration forum, the union's bad faith handling of the claim may so taint the outcome in that forum that a section 301 suit by the employee can still be entertained."). Thus, as the court in *Zamren* explained, "[i]f such a breach may be demonstrated, an action under § 301 will lie, even in the event of an arbitration decision adverse to the employee. But it is premature to charge the Union with improper representation of plaintiff at the arbitration proceedings before the arbitration proceedings have begun." 1981 WL 2377, at *5.

**B.    The Union's motion for summary judgment is denied.**

The Union moves for summary judgment on the grounds that Plaintiffs "cannot identify any legally cognizable harm that would not be resolved by the Union's submission to an arbitrator." Def.'s Mot. 5. Plaintiffs respond that the Union's motion is premature because discovery has not yet commenced and there are genuine issues of material fact with respect to their claims.

In *Ames v. Westinghouse Elec. Corp.*, 864 F.2d 289 (3d Cir. 1988), the Third Circuit Court of Appeals held that a plaintiff's duty of fair representation action against his union was not mooted by the union's agreement to arbitrate his grievance. In that case, the plaintiff, a

discharged employee, asked his union steward to investigate whether the circumstances of his discharge violated the CBA, and he "thereafter spoke with various [u]nion officials who assured him they would follow up." *Id.* Ultimately, however, "[h]is efforts to have the [u]nion act on his behalf were unavailing," and he filed a hybrid action against his employer and the union. *Id.* While the action was pending, and after "fairly extensive discovery," the employer and the union agreed to arbitrate the plaintiff's grievance, after which the district court dismissed the case as moot. *Id.* On appeal, the Third Circuit Court of Appeals held that the employee's action against the union was not mooted by the arbitration, reasoning that absent the union's alleged breach of its duty to conduct a "fair and prompt consideration" of the plaintiff's grievance, the plaintiff "would not have been required to retain an attorney in order to pursue his contract remedies against [the employer]." *Id.* at 293. Accordingly, the court held that the plaintiff could recover "consequential damages flowing from the [u]nion's alleged breach of its duty of fair representation," namely, "the attorneys' fees incurred in pursuing the section 301 claim against the employer." *Id.*

Similarly here, Plaintiffs have alleged that the Union failed to fairly and promptly consider and process their grievance, in breach of the duty of fair representation. Although the Union denies these allegations, at this stage of the proceedings there remain disputed issues of material fact concerning the alleged breach. Accordingly, the Union's motion for summary judgment is denied.

**C.     The Union's motion, in the alternative, to stay this action pending arbitration is granted.**

In the alternative to its motion for summary judgment, the Union requests that the Court stay this action pending the arbitration of Plaintiffs' grievance. Because the pending arbitration

may resolve some or all of the claims at issue in this litigation, the Court grants the Union's

request and stays this action pending the results of the arbitration. [7]

## V.      Conclusion

For the reasons set forth above, Plaintiffs' Motion to Stay Binding Arbitration, ECF No.

19, is denied, and the Union's Motion for Summary Judgment, ECF No. 21, is denied in part and

granted in part, such that this case is stayed pending arbitration. A separate order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge

---

[7]      Plaintiffs have requested that if the Court determines that a stay of litigation is appropriate, the Court order that counsel for Plaintiffs be allowed to be present and to participate in the arbitration, in order to "protect Plaintiffs from any further arbitrary or discriminatory acts by the union." Pls.' Br. Opp'n 18 n.4., ECF No. 23. The Union has not filed a reply to Plaintiffs' request, nor have any other of the Defendants stated a position on this request. The Court of Appeals for the Ninth Circuit has observed that "no court has adopted the rule that employees are entitled to independently retained counsel in arbitration proceedings, or that the exclusion of such attorneys from arbitration violates the duty of fair representation," and that "an examination of federal labor statutes suggests disfavoring the involvement in grievance proceedings of attorneys privately retained by union members." *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1483 (9th Cir. 1985). *See also Gen. Drivers, Salesmen & Warehousemen's Local Union No. 984 v. Malone & Hyde, Inc.*, 23 F.3d 1039, 1043 (6th Cir. 1994) ("[I]n the absence of language in a CBA guaranteeing an employee the right to be represented in grievance and arbitration proceedings by someone other than the exclusive bargaining representative, an employer has no obligation to deal with an individual employee or any representative of the employee other than the exclusive bargaining representative."). In view of these considerations, the Court denies Plaintiffs' request.